## In re McGOWAN.

## KNITTEL et al., v. McGOWAN.

(District Court, E. D. Pennsylvania. January 26, 1905.)

### No. 1,935.

1. INVOLUNTARY BANKRUPTCY—INSOLVENCY—EVIDENCE.

Under Bankr. Act July 1, 1898, c. 541, § 1, subd. 15, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419], providing that a person shall be deemed insolvent within the provisions of the act when the aggregate of his property shall not, at a fair valuation, be sufficient in amount to pay his debts, evidence of insolvency in an involuntary bankruptcy proceeding must be such as to satisfy the jury that defendant's existing indebtedness is more than the value of his assets at the time the petition is filed.

2. SAME—NEW TRIAL.

Where, in an involuntary bankruptcy proceeding, there was no denial of defendant's indebtedness, but he merely raised technical objections to the manner of proving the same, he would not be granted a new trial, though the claims were not established by the same technical exactness as is required where the indebtedness is directly in issue.

3. SAME—EVIDENCE—JUDGMENTS.

On the hearing of an involuntary bankruptcy proceeding the record of a judgment which was a subsisting claim against the bankrupt was properly admitted in evidence, though it had been opened to allow the bankrupt to make defense.

4. SAME—DATE OF ENTRY.

In an involuntary bankruptcy proceeding a judgment entered against the alleged bankrupt in a state court more than four months before the commission of the act of bankruptcy was admissible to show insolvency.

5. SAME—CLAIMS—PROOF—HARMLESS ERROR.

Where, in an involuntary bankruptcy proceeding, defendant did not deny certain claims alleged as tending to show insolvency, and on production of the creditor's books he did not avail himself of an opportunity to cross-examine such creditors with reference to the books, he was not prejudiced by the court's permitting the creditors to testify to the amounts of their respective claims from memoranda taken from the books.

6. SAME—UNMATURED CLAIMS.

On an issue of a bankrupt's insolvency, evidence of indebtedness for which the bankrupt's unmatured notes were held was properly admitted, in the absence of the bankrupt's denial of such indebtedness.

7. SAME—REVERSIONARY INTEREST.

Where an alleged involuntary bankrupt had executed a deed in fee to certain real estate, evidence that he had a parol agreement with the grantee, by which, on his payment of certain judgments and claims, the property was to revert to him, and that such reversionary interest was an asset valued at $20,000, was inadmissible on the issue of his insolvency.

8. SAME—PRESERVATION OF ESTATE—INSTRUCTIONS.

Where, in an involuntary bankruptcy proceeding, it was necessary, pending determination, to renew the alleged bankrupt's hotel license, and the bankrupt failed to exercise the option of continuing in possession, provided he could pay for the new license, whereupon his license was sold, an instruction on the issue of insolvency that the license fee was paid for the purpose of preserving the only valuable asset of the estate, and that the amount so paid was to be considered as a liability under the proof that the purchaser of the license agreed to pay $16,000 for it with the license fee paid, or $14,900 if he paid the license fee for the succeeding year, was proper.

9. SAME—LIQUOR LICENSE—PREJUDICE.
>    On an issue as to an alleged involuntary bankrupt's insolvency he was not prejudiced by a ruling that his liquor license was an asset of his estate.
>    [Ed. Note.—Franchises and licenses as assets in bankruptcy, see note to Fisher v. Cushman, 43 C. C. A. 389.]

In Bankruptcy.

William F. Johnson and Samuel W. Cooper, for plaintiff.
Charles H. Edmunds and Samuel Scoville, Jr., for defendant.

HOLLAND, District Judge.    In this case an involuntary petition in bankruptcy was filed, and the alleged bankrupt filed an answer denying that he had committed the act of bankruptcy set forth in the petition, or that he was insolvent, and requested that these issues be tried by a jury, according to the provisions in the bankrupt act.    Accordingly, an issue was framed, and the case was tried by a jury, and a verdict rendered finding against the bankrupt.    Evidence was offered of the entry of two judgments against the bankrupt in the court of common pleas of Philadelphia county within four months, which he failed to vacate or discharge within five days before the sale of his property, upon which a levy had been made by the sheriff of the county.    There was no dispute as to these facts tending to establish the commission of the act of bankruptcy.    As to the question of his insolvency, the creditors offered in evidence two other judgments, which had been entered in the court of common pleas of Philadelphia county, one of which had been opened by that court for the purpose of allowing the defendant, who is the alleged bankrupt, to make a defense, and was objected to for that reason. The other judgment was offered in evidence as a subsisting claim against the alleged bankrupt, and was objected to upon the ground that it was entered of record in the said court more than four months before the date of the commission of the act of bankruptcy, and for the other reason that it was for more than was due the plaintiff in the judgment. Counsel for the creditors, however, stated the fact that the whole amount of the judgment was not due, and only submitted it as evidence of an indebtedness, and stated the correct amount, to wit, $975.    All the other claims not of record were offered in evidence, making a total of about $20,941.37.    Claims amounting to $11,782.95 were offered in evidence for the Rothaker Brewing Company by G. F. Rothaker, Jr., who produced an extract from the books of their company, and was allowed to testify to the claims from this statement, which was objected to by the counsel for the bankrupt upon the ground that it was necessary to produce the books.    He was, however, allowed to testify to the amount, and the books were subsequently produced for the purpose of examination by the bankrupt's counsel, and for the purpose of examining the witness as to the books and the correctness of the indebtedness; but the bankrupt's counsel did not call the witness for that purpose, although the books were produced.    Other claims were admitted in the same way.    Herman Voight was permitted to testify that the bankrupt was indebted to him in the sum of $1,500 for notes and interest, but he did not produce these notes because they were not due and payable at this time.    However, the indebtedness had been created prior

to the time the involuntary petition in bankruptcy was filed. Joseph Gaidas testified that $975 was due on the judgment entered of record in Philadelphia county, and that he knew of his own knowledge that this amount was due upon that judgment.

Upon the question of assets counsel for the bankrupt offered to prove that at the time the hotel property in Philadelphia had been transferred by him there was a verbal agreement that upon the payment of certain indebtedness the property should revert to him, and that the value of this equity was worth $20,000, although the deed on its face was an absolute fee-simple deed, without any reservations. This evidence was excluded. The bankrupt's business was that of a hotel keeper, and at the time of the commission of the act of bankruptcy was a licensee of a hotel in Philadelphia. Some time prior to the trial of this case new licenses for the year were issued in Philadelphia, and the bankrupt was unable to raise sufficient money to take out the new license at a cost of $1,100, and the receiver was directed to sell his license, and to provide for payment of the license fee for the new license for the coming year. He accordingly advertised and sold the same for $14,900 if the purchaser paid for the new license, and $16,000 if the receiver was required to pay the license fee. These facts were established, and the court charged as follows:

"A number of amounts have been presented, among them $11,782.95 of the Rothaker Brewing Company, in which there is $1,100 charged for the payment of a license fee which was paid by them on the 11th day of May, which was long subsequent to the presentation of the involuntary petition in bankruptcy. That was paid for the purpose of preserving the only valuable piece of property that was convertible in bankruptcy to pay the debts of this defendant, and I charge you, gentlemen of the jury, that this is a fair item to place in this total of liabilities, because, if it is not placed in the liabilities, according to the testimony, it is to be taken off of the value of the license, because the party who purchased that license was to give $16,000 for it with the license fee paid, or $14,900 if he paid license fee for this year."

The court also charged that debts payable in the future were to be taken into consideration on the question of insolvency, and submitted to the jury the question as to what amount of indebtedness had been offered in evidence, and the amount proven to their satisfaction of that submitted. The jury were also told that a liquor license in a bankrupt court was an asset for the payment of debts.

Twenty exceptions were filed to the admission and rejection of evidence and the charge of the court, which may be classified as follows: (1) To the admission of a judgment entered in the court of common pleas, which had been opened for the purpose of allowing the defendant to make a defense to the claim; (2) to the record of a judgment entered against the bankrupt more than four months before the commission of the act of bankruptcy; (3) to the admission of claims by witnesses without requiring them to testify from books of original entry, although the books were produced in court subsequently by the witnesses; (4) to the admission of evidence as to indebtedness on notes without producing the same in court; (5) to the rejection of the offer of evidence, on the part of the bankrupt, to show the value of an equity in real estate, for which he had given an absolute deed in fee simple; (6) to the charge of the court directing them to take into consideration

the payment of $1,100 of the license fee by the receiver; (7) to the comments of the court as to the measure of proof in establishing the claims, and the amounts claimed to have been established; (8) to the statement of the court that a liquor license is an asset in the court of bankruptcy. These exceptions are too voluminous to state verbatim. I have not been convinced that any of them raise a question to warrant the court granting a new trial. As the question of the commission of the act of bankruptcy is undisputed, the only issue controverted was the question of insolvency at the time of the filing of the petition in bankruptcy. By section 1, subd. 15, c. 541, Act July 1, 1898, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3419], "a person shall be deemed to be insolvent within the provisions of the act when the aggregate of his property * * * shall not at a fair valuation be sufficient in amount to pay his debts." The issue, then, before the jury was the question of solvency, and the burden of proof under section 3, subd. 3, 30 Stat. 546 [U. S. Comp. St. 1901, p. 3422], is placed upon the creditors. They are required to submit evidence to show the amount of his debts and the value of his assets. The evidence produced for the purpose of showing his indebtedness must be such as to satisfy the jury of its existence, and that it is more than the value of his assets at the time the petition is filed. Where there is no denial of the indebtedness, as in this case, and the alleged bankrupt only raises technical objection to the manner of proving that indebtedness, without denying its existence, a new trial will not be granted, although the claims are not established by the same technical exactness as is required in the trial of cases where the indebtedness is the question directly in issue, yet the petitioners are required to establish the existence of the indebtedness to the satisfaction of the jury. There was no dispute in this case by the bankrupt that he owed these claims, offered in evidence in the manner stated.

1. We think there was no error committed in allowing the record of the judgment entered in the court of common pleas of Philadelphia county to be offered in evidence, although it had been opened for the purpose of allowing the defendant to make a defense to it. It was a subsisting claim, and, if he had a defense to the claim as a subsisting one against his estate in bankruptcy, he could have made it before the jury; but he offered no evidence whatever to show that he was not indebted to the plaintiffs in that judgment.

2. It was entirely competent to offer evidence of the judgment, although entered in the court of common pleas more than four months before the commission of the act of bankruptcy, for the purpose of showing the solvency or insolvency of the bankrupt; and the evidence of Mr. Gaidas was in his favor, as it established the fact that, instead of over $4,000 being due on this judgment, there was only subsisting a claim at that time of $975.

3. A number of claimants were permitted to state from memoranda taken from books of original entry the respective amounts of their claims, who afterward produced their books in court for the purpose of being cross-examined by counsel for the alleged bankrupt, if he saw fit to do so. This evidence was submitted to the jury for the purpose of showing them the claims due from the bankrupt's estate to that

amount; and if he saw fit to dispute these claims it would have been incumbent upon the creditors to establish their existence with the same certainty and the same measure of evidence as is required in the proof of any fact before a jury, and it was a question for the jury as to whether or not there was sufficient evidence submitted to them for the purpose of establishing these claims as subsisting indebtedness at the time the petition was presented, and it was submitted to them to pass upon this question.

4. The admission of evidence of an indebtedness, for which notes were held, not yet payable, was submitted to the jury, and there was no denial of the existence of this indebtedness. If it had been disputed, another question might be presented; but we see no reason why the jury should not be permitted to find the existence of this indebtedness, upon the evidence submitted in regard to it, when the alleged bankrupt was on the stand, and did not deny that the notes had been given and the indebtedness existing as testified to by the claimant.

5. The bankrupt set up a verbal agreement, which he alleged was made by him with the grantee of a property, to whom he had given a deed in absolute fee simple, to the effect that upon the payment of certain judgments and claims that the property was to revert to him, and he offered to prove this reversionary interest arising out of this verbal agreement was an asset valued at $20,000. This was ruled out, and we think the statement of the facts in connection with it is a sufficient answer to the offer.

6. Before the trial of this case it was necessary to renew the license, which was the asset of greatest value in this estate. The record of this case before the trial will show that the alleged bankrupt was given the option of continuing in possession of the property, provided he could pay for the new license, which was to be taken out on a certain date to prevent its being forfeited. He failed to raise sufficient cash for that purpose, and the receiver was directed to sell the license and to pay the new license fee in order that this asset might be preserved. He accordingly advertised the license for sale, and sold to the present owner for $16,000 provided he (the receiver) paid the license fee, but the purchasing price was to be $14,900 in case the purchaser paid the license fee. In view of this condition of affairs, and the necessity of preserving this asset, the charge of the court, as above set forth, was fully warranted.

The question of the amount of indebtedness proven was submitted to the jury for them to find what amount existed at the time the petition was filed. The amounts specified in the charge of the court were simply amounts to which the items totaled in various aspects of the case, but the question as to the total amount proven was to be determined by the jury.

As to the question of whether or not a liquor license was an asset, we do not see how the bankrupt could be injured by the instructions of the court that it is an asset, as he was interested in showing assets to an amount greater than his indebtedness, and the charge of the court, in holding the license to be an asset, was to that extent favorable to his contention of solvency.

Motion for a new trial refused.